# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PATRICIA SWARTZEL,

    *Plaintiff,*

vs.

    Case No. 21-02090-EFM-GEB

JOHNSON COUNTY COMMUNITY COLLEGE,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Patricia Swartzel, formerly a classroom coordinator and teacher at Johnson County Community College in Overland Park, Kansas, brings suit against her former employer for a slew of alleged grievances suffered during the term of her employment. Plaintiff claims she was the victim of retaliatory discharge, violations of the Family Medical Leave Act, as well as various forms of illegal discrimination under the Americans with Disabilities Amendments Act ("ADAAA") and the Kansas Act Against Discrimination ("KAAD").[1] Defendant Johnson County Community College ("JCCC") now moves for partial judgment on the pleadings, contending that

---

[1] Plaintiff's response to Defendant's motion seems to suggest she also brings claims under Title VII, the Age Discrimination in Employment Act, and the Kansas Age Discrimination in Employment Act. These claims do not appear on the face of Plaintiff's First Amended Complaint. Therefore, the Court does not address them in this Order.

parts of Plaintiff's ADAAA and KAAD claims must be dismissed for failure to exhaust administrative remedies. For the reasons laid out more fully below, the Court grants Defendant's motion in part and denies it in part.

## I. Factual and Procedural Background[2]

Plaintiff began her position at JCCC in 2009. Seven years later, black mold was discovered growing on the carpet in Plaintiff's classroom. JCCC janitorial staff used a carpet shampoo composed of "strong chemicals" to clean the black mold out of the carpet. Plaintiff was present in her classroom after the use of the shampoo and claims that, nearly immediately, her throat began to feel raw and her voice hoarse. According to Plaintiff, she has thereafter experienced adverse symptoms whenever exposed to strong fragrances, such as those from cleaning supplies or perfumes. When exposed, she reports inflammation in her throat and nasal passages, difficulty breathing, asthma attacks, and fatigue. In 2017, about a year after her initial incident, Plaintiff began to request accommodations aimed at curbing her contact with strong fragrances. Her first administrative charge, dually filed with the Kansas Human Rights Commission ("KHRC") and Equal Employment Opportunity Commission ("EEOC"), helps to summarize her complaints with respect to her requests for accommodation:

> I was hired on or about September 2, 2009 as a Classroom Coordinator/Lead Teacher.
>
> In or about November 2017, 1 submitted my initial reasonable accommodation (RA) form to the Human Resources (HR) Department. HR did not tell me that information on my RA form was insufficient to be approved until I made another

---

[2] These facts, assumed to be true for the purposes of this order, are taken from Plaintiff's Complaint and her two administrative charges. Though normally the Court only considers the plaintiff's complaint in ruling on a motion to dismiss, the Court may consider documents of undisputed authenticity that are "central to the complaint." *Dunmars v. Ford Cty., Kan. Bd. of Comm'rs*, 2019 WL 3817958, at *3 (D. Kan. 2019) (citations omitted). The authenticity of the charges is not disputed by the parties and they form the basis of Plaintiff's claims, making them central to the Complaint.

> request to my manager in or about March 2018. Two more RA forms were submitted with specific doctor's notes in regards to my disability restrictions. I still have health issues because my employer has done some but not all of the accommodation requested. Those requested accommodations were purposely ignored or denied.
>
> I have made several complaints to my supervisor and HR about my RA requests not being attended or ignored. My manager and supervisor have harassed and treated me in a rude manner since my request for RA.
>
> I believe that I have been discriminated against because of my disability due to my reasonable accommodation requests and retaliated because of my complaints in violation of the Americans with Disabilities Act (ADA) of 1990, as amended.

This charge was submitted to the KHRC and EEOC on June 30, 2019. On August 12, 2019, the EEOC concluded that it was unable to determine that a violation of the relevant statutes had taken place and notified Plaintiff that she had 90 days to bring suit in federal or state court. Two days later, the KHRC notified Plaintiff that it found no probable cause for her charge, based on the EEOC's investigation and determination. Plaintiff did not bring suit based on this charge within the 90-day window.

Only a few months later, Plaintiff again had concerns that her requested accommodations were not being respected by her supervisors at JCCC. Plaintiff's second administrative charge, again filed both with the EEOC and KHRC, focuses on a particular incident with her manager and supervisor:

> On or about November 22, 2019, I found my manager cleaning my desk with a Mister Clean sponge and soft scrub with bleach. I have a disability where I cannot be around many types of chemicals because my condition would be triggered. My manager knew this because I have submitted many medical documents to her and Human Resources (HR) for reasonable accommodations.
>
> My manager had the lid off the bottles. I asked her why she was cleaning my desk with chemicals. She told me she thought the substance did not have any fragrance. I told them it was a problem. I had a reaction to the chemicals within minutes, which affected my respiratory tract. I could not swallow, my breathing was distressed, my throat hurt, and I was hoarse. I went around the desk, and I saw my

> supervisor squeezing the bottle in the sponge that my manager had in her hand. Once I expressed my concerns, my manager told my supervisor to take the bottle. My supervisor took the bottle away after she squeezed the bottle on to the sponge in my manager's hand.

The charge goes on to complain about JCCC's internal investigation into this complaint, as well as state Plaintiff's belief that her "reasonable accommodations were violated because of [her] disability and retaliated against by [her] manager" because of her first charge. On the charge form, Plaintiff marked the boxes for "retaliation" and "disability" discrimination and stated that the alleged discrimination took place from October 22, 2019, until September 2, 2020.

Plaintiff filed the charge on September 17, 2020, at that time without the benefit of legal counsel. But before this charge form was filed, Plaintiff stresses that she had an in-depth email conversation with an EEOC investigator.[3] She states that she included a great deal of detail in these emails, including factual detail beyond that included in the final charge form. These facts did not make it into the final form, which Plaintiff states was drafted by the EEOC investigator. The final charge form was ultimately signed and approved by Plaintiff.

Based on the charge, the EEOC was again unable to determine that there was a violation of the relevant statutes and notified Plaintiff of her right to sue on November 19, 2020. Plaintiff has not provided the Court with documentation that the KHRC similarly closed her administrative complaint.

Plaintiff filed the instant suit on February 17, 2021 and amended her Complaint on July 6, 2021. As relevant for present purposes, Plaintiff brings claims both under the ADAAA and the

---

[3] Plaintiff asks the Court to consider the content of these emails in ruling on Defendant's motion. But because Defendant disputes the authenticity of Plaintiff's emails, the Court will not do so. *See Dunmars*, 2019 WL 3817958, at *3.

KAAD. Defendant responded with its Answer and an Amended Answer, and now moves for judgment on the pleadings.

## II.     Legal Standard

Because a responsive pleading has already been filed, this motion is styled as a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) rather than a motion to dismiss under Rule 12(b)(6). This is a distinction without meaningful difference as the standard is the same under both rules.[4] A defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[5] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[6] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[7] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[8] In ruling on the motion, the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[9] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[10]

---

[4] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[9] *Iqbal*, 556 U.S. at 678.

[10] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

### III.     Analysis

Defendant seeks dismissal, at least in part, of Counts III through VI of the First Amended Complaint. These are Plaintiff's claims under the ADAAA (Counts III through V) and KAAD (Count VI). Count III alleges that Defendant failed to accommodate Plaintiff's disability in violation of the ADAAA. Count IV alleges that Defendant discriminated against Plaintiff by subjecting her to a hostile work environment, disparate treatment, and eventually termination, all in violation of the ADAAA. Count V alleges that Defendant retaliated against Plaintiff for engaging in protected activity under the ADA, also in violation of the ADAAA. Finally, Plaintiff in Count VI brings a variety of claims under the KAAD, including failure to accommodate, hostile work environment, retaliation, and disparate treatment. Defendant responds that most of these claims were not exhausted by Plaintiff's administrative charges, and those that were must be cabined to the factual allegations contained in the relevant administrative charge. The Court examines each in turn.

**A.     ADAAA Claims**

At the outset, there are three preliminary issues bearing on the resolution of Defendant's motion with respect to the ADAAA claims. First, Plaintiff seems to suggest that she will use the factual allegations in her first administrative charge to support her instant ADAAA claims. To the extent she does so, the Court notes that Plaintiff's 90-day clock for her first charge has long since expired, and she has lost her right to bring suit based on that charge.[11]

Second, with respect to her second administrative charge, Plaintiff urges the Court to look not only at the face of the charge form but also at several emails she exchanged with an EEOC

---

[11] *Gardenhire v. Solomon Corp.*, 2019 WL 2409610, at *2 (D. Kan. 2019) ("A plaintiff is barred from bringing a lawsuit more than 90 days after the plaintiff received the EEOC's right to sue letter.").

investigator. These emails, she contends, contain a more complete picture of the legal and factual basis for her claims which unfortunately did not make it into the final charge form, which she stresses was filled out by the EEOC investigator.

The Tenth Circuit has said, albeit in an unpublished decision, that "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations."[12] But in that same decision, the court recognized that the plaintiff's subsequent filing of a formal charge that contains only certain allegations "effectively negate[s]" earlier allegations that the plaintiff now seeks to include.[13] This is true even if Plaintiff is without the benefit of counsel at the time the charge is filed, because "anyone reading the charge would realize that it did not include" the missing allegations.[14] Further, even if the agency filled out the charge form for the plaintiff, she still had control over the charge by virtue of her signature.[15] The charge form would not be effective without her signature, and her signing of the form suggests she read and understood the charge in its entirety.[16] Thus, even if the Court were to consider Plaintiff's emails with the EEOC investigator, it would conclude that Plaintiff's subsequent formal charge, approved and signed by her, negated any allegations not appearing on the face of the charge.

---

[12] *Welsh v. City of Shawnee*, 1999 WL 345597, at *5 (10th Cir. 1999) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994)).

[13] *Id.*

[14] *Id.*

[15] *Williams v. Prison Health Servs., Inc.*, 159 F. Supp. 2d 1301, 1311 n.1 (D. Kan. 2001), *aff'd*, 35 F. App'x 774 (10th Cir. 2002).

[16] *Id.*

This Court's recent decision in *Mack v. J.M. Smucker Co.*,[17] does not require a different result. In that case, the Court declined to dismiss the plaintiff's complaint for failure to exhaust even though he had not shown that he received a right-to-sue letter from the KHRC.[18] The plaintiff claimed that the agency's flawed process was to blame for his failure to obtain the letter, and the Court declined to consider the affirmative defense of failure to exhaust based on the record before it.[19] Here, by contrast, Plaintiff does not take issue with the agency's process but with the *content* of the formal charge drafted by the agency. Though she believes some of her factual allegations were left out of the formal charge, she had every right to demand a new charge be drafted to be consistent with the content she thought should be included. But instead, she signed the charge as the agency had drafted it. Thus, the Court will not consider the content of Plaintiff's proffered emails and will instead focus on the language of the second charge.[20]

Finally, Plaintiff vaguely asks the Court to apply the principles of waiver, estoppel, or equitable tolling to her administrative charges. She does so without the faintest inclination toward discussing the legal standards required for the application of those principles. Rather, she suggests that the difficulties caused by COVID-19 justify their application. Without any discussion of those standards, the Court simply cannot agree.

With these preliminary matters resolved, the Court turns to the central issue of whether Plaintiff properly exhausted her administrative remedies for her ADAAA claims (Counts III

---

[17] 2021 WL 4476792 (D. Kan. 2021).

[18] *Id.* at *3–*4.

[19] *Id.* at *4.

[20] *See Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017) ("[T]he general rule remains that we typically look to the charge form if one exists. This is because the charge form, not a previous filing, is given to the employer to notify it of the potential claims against it and ordinarily determines the scope of the EEOC's investigation.").

through V). Employees alleging discrimination under the ADA must comply with specific administrative complaint procedures to exhaust their administrative remedies.[21] In Kansas, this means that employees must file complaints with the EEOC or KHRC prior to bringing their claims in federal court.[22] "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense."[23] "Because it is a mandatory rule, however, the court must enforce this exhaustion requirement if the employer properly raises it."[24] In this case, Defendant properly raised the affirmative defense.

The twofold purpose of requiring aggrieved parties to file administrative charges is to give employers notice of the "claims being brought against them" and to provide "the EEOC with an opportunity to conciliate the claims."[25] Therefore, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[26] Courts must then determine "whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."[27] Thus, the administrative complaint must include "[e]ach discrete instance of discriminatory treatment."[28] The court liberally construes administrative complaints in the interest of justice.[29]

---

[21] *See Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012).

[22] *Azzun v. Kan. Dep't of Health & Env't*, 2011 WL 903901, at *3 (D. Kan. 2011).

[23] *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (citations omitted).

[24] *Id.* (citation omitted).

[25] *Dunmars*, 2019 WL 3817958, at *3 (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1195 (10th Cir. 2004)).

[26] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citation omitted).

[27] *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (cleaned up).

[28] *Dunmars*, 2019 WL 3817958, at *3 (citation omitted).

[29] *Id.* (citing *Foster*, 365 F.3d at 1195).

*1.     Count III*

Count III of Plaintiff's First Amended Complaint alleges that Defendant failed to accommodate Plaintiff's disability.  Defendant raises a concern that this goes beyond the scope of her second administrative charge.  That charge limits itself to describing an incident on November 22, 2019, during which her manager and supervisor, while cleaning Plaintiff's desk, used cleaning products containing fragrances that caused Plaintiff to experience an adverse reaction.  The charge does not contain facts describing any other alleged failures Plaintiff's purported disability.  Thus, to the extent Plaintiff seeks to bring failure to accommodate claims based on other factual circumstances, Plaintiff has not presented those first to the EEOC and thus they would not "reasonably be expected to follow" from the EEOC investigation following the charge.[30]  This leaves those potential claims unexhausted.[31]  Plaintiff's failure to accommodate claim is limited to the allegations appropriately exhausted in her second administrative charge.

*2.     Count IV*

Count IV alleges that Defendant discriminated against Plaintiff, in violation of the ADAAA, by treating her differently from similarly situated employees, by subjecting her to a hostile work environment, and by terminating her employment on account of her disability or her requests for accommodation.  Problematically, though, most of these complaints do not appear on the face of her second administrative charge.  In her charge, Plaintiff does not say that her employment with JCCC was terminated.  She mentions no facts to suggest she was treated

---

[30] *Jones*, 502 F.3d at 1186.

[31] *See Miller v. Dillon Companies, Inc.*, 2016 WL 2894696, at *7 (D. Kan. 2016) ("While plaintiff accused defendants of denying her reasonable accommodations in her charge, she identified no acts occurring before January 2015 to support her failure to accommodate claim. Thus, investigation into defendants' alleged failure to accommodate plaintiff before January 2015 cannot 'reasonably be expected to follow the charge of discrimination submitted to the EEOC.' " (quoting *Jones*, 502 F.3d at 1186)).

differently from other employees, either by "limiting, segregating, or classifying" her in a way "that adversely affects [her] opportunities or status" because of her disability.[32] And the facts she does describe do not even remotely rise to the level of a hostile work environment.[33] Because the charge does not contain facts to support these claims, the Court has no trouble concluding they would not fall within the scope of the administrative investigation following the charge. Thus, the claims in Count IV are dismissed for failure to exhaust administrative remedies.

   3.   *Count V*

Count V alleges that Defendant retaliated against Plaintiff for engaging in protected activity under the ADAAA. Plaintiff characterizes this protected activity as opposing acts and practices made unlawful by the ADA, including her requesting and making use of reasonable accommodations for her disability. Defendant contends that this does not appear anywhere in Plaintiff's second administrative charge, but this is mistaken. Plaintiff's charge discusses her repeated requests for reasonable accommodation; she states "[m]y manager knew [about my condition] because I have submitted many medical documents to her and Human Resources (HR) for reasonable accommodations." Though perhaps she does not explicitly tie her requests for accommodation to the alleged retaliatory acts described in the second charge, a liberal construction of the charge[34] requires the inference that she intended to connect the two. Thus, Plaintiff's charge

---

[32] 42 U.S.C. § 12112(b)(1)

[33] *See Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 668 (10th Cir. 2004) ("To lay a factual foundation for a hostile work environment claim, Mitchell must allege facts indicating a workplace 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' Mitchell's EEOC charge contains no factual allegations of treatment in manner or degree sufficient to allege a hostile work environment. Consequently, Mitchell's Title VII hostile work environment claim . . . is dismissed for failure to exhaust administrative remedies.") (internal citation omitted).

[34] *Dunmars*, 2019 WL 3817958, at *3 (citing *Foster*, 365 F.3d at 1195).

contains the facts on which her retaliation claim is based, and thus that claim would have fallen within the scope of the administrative investigation. Plaintiff properly exhausted her retaliation claim in Count V.

**B.     KAAD Claims**

Plaintiff's KAAD claims once again require the Court to consider the issue of which of the two administrative charges filed support Plaintiff's contention that she properly exhausted her administrative remedies. Beginning with Plaintiff's second charge, Defendant contends that Plaintiff has failed to exhaust because she has not shown that the KHRC notified her that it had closed her administrative complaint. The KAAD requires that a plaintiff timely file an administrative charge with the Kansas Human Rights Commission before filing a lawsuit.[35] Filing a charge alone, however, is not sufficient to exhaust. "The doctrine of exhaustion of administrative remedies dictates that a remedy before an administrative agency provided by law must be sought *and completed* before courts will act."[36] Nor may Plaintiff rest on her filing with the EEOC and thereafter receiving a right-to-sue letter from that agency, as Kansas courts have held filing with the EEOC alone is insufficient to exhaust remedies under the KAAD.[37] Plaintiff instead has the burden of showing that she exhausted her remedies with the KHRC.[38]

As Defendant points out, Plaintiff has failed to meet that burden with respect to her second administrative charge. While she dually filed with both the KHRC and the EEOC, she only

---

[35] K.S.A. § 44–1005(i).

[36] *Stephens v. Unified Sch. Dist. No. 500*, 218 Kan. 220, 546 P.2d 197, 203 (1975) (emphasis added) (quotation omitted).

[37] *Hughs v. Valley State Bank*, 26 Kan. App. 2d 631, 994 P.2d 1079, 1086–87 (1999).

[38] *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1234 (D. Kan. 1995) (quoting *Wrenn v. Kansas*, 561 F. Supp. 1216, 1222 (D. Kan. 1983)). *See also Nixon v. Muehlberger Concrete Const. Co.*, 170 F. Supp. 2d 1123, 1125 (D. Kan. 2001).

provides the Court with her EEOC right-to-sue letter. She has given the Court no indication that the KHRC similarly closed her complaint. Because she has failed to meet her burden of showing she exhausted her complaint with the KHRC, the second administrative charge cannot support Plaintiff's instant claims before this Court.

Fortunately for Plaintiff, her first administrative charge is plagued by none of the issues that sunk her second charge. Plaintiff filed her first charge with both the KHRC and EEOC. She received a right-to-sue letter from the EEOC and a letter from the KHRC finding no probable cause and closing her complaint. And though this first charge could not support the ADAAA claims above because the 90-day clock had run, the KAAD has no analogous limitation.[39] Thus, at least procedurally, Plaintiff's first administrative charge is without issue. But Defendant again contends the *content* of the first charge does not support Plaintiff's numerous KAAD claims in Count VI of the First Amended Complaint.

Plaintiff's first administrative charge solely concerns Plaintiff's various requests for accommodation and Defendant ignoring or wrongfully denying those requests. Thus, the only claims that reasonably grow out of this charge are Plaintiff's claims that Defendant failed to accommodate her disabilities and retaliated against her for making such requests for accommodation. Defendant contends that even these claims are unexhausted because they lack the degree of specificity Defendant believes is required. But precise, comprehensive charges are not required to exhaust administrative remedies.[40] While a complete lack of factual specificity

---

[39] *See Witherspoon v. Roadway Express, Inc.*, 782 F. Supp. 567, 572–73 (D. Kan. 1992) ("The Kansas Act Against Discrimination ("KAAD") does not contain its own statute of limitations. Therefore, the general statute of limitations for tort actions applies to claims under the KAAD.")

[40] *Manning v. Blue Cross & Blue Shield of Kansas City*, 2012 WL 2449843, at *2 (D. Kan. 2012), *aff'd*, 522 F. App'x 438 (10th Cir. 2013). *See also Foster*, 365 F.3d at 1196 (holding that "[b]ecause the charges as filed 'identify

may render a particular charge unexhausted,[41] Plaintiff here has included enough facts to put Defendant on notice of the claims brought and their underlying factual basis.  Plaintiff included facts about the approximate dates of several of her requested accommodations, as well as Defendants alleged responses to those requests.  This is enough to put Defendant on notice of Plaintiff's failure to accommodate and retaliation claims under the KAAD, and thus satisfy a fundamental goal of the administrative process.[42]  By contrast, Plaintiff's claims regarding her termination, the allegedly hostile work environment created by Defendant, and being subjected to treatment worse than other employees are completely absent from Plaintiff's first charge, as are any facts that would lead to an administrative investigation into any of these claims.  Therefore, only Plaintiff's failure to accommodate and retaliation claims under the KAAD have been properly exhausted.

Finally, Defendant asks the Court to limit the time frame for Plaintiff's KAAD claims to six-months prior to her filing of the first charge.  Its authority for this request is K.S.A. § 44-1005(i), which states that "[a]ny complaint filed pursuant to this act must be so filed within six months after the alleged act of discrimination."  But that same section also states that this six-month limit does not apply if "the act complained of constitutes a continuing pattern or practice of discrimination in which event it will be from the last act of discrimination."[43]  On her charge form, Plaintiff checked the box for a "continuing action" and listed the November 1, 2017, to May 31,

---

the parties' and 'describe generally the action or practices complained of,' " they were sufficient to exhaust administrative remedies. (quoting 29 C.F.R. § 1601.12(b))).

[41] *Manning*, 2012 WL 2449843, at *2.

[42] *See Foster*, 365 F.3d at 1195 ("This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them.").

[43] K.S.A. § 44-1005(i).

2019, as the "date(s) discrimination took place." Thus, Plaintiff has alleged a continuing action, and her charge was timely because she filed it within six months of May 31, 2019, the date Plaintiff alleges the last act of discrimination took place. The Court therefore need not limit her claims to the six-month window before she filed her first administrative complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Judgement on the Pleadings (Doc. 20) is **GRANTED IN PART and DENIED IN PART.**

Count IV is dismissed.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2022.

ERIC F. MELGREN
CHIEF U.S DISTRICT JUDGE